Pintea v. Gurvey. Ms. Dudley. May it please the court. Taking advantage of those who belong to a protected class and housing related transactions is a violation of the Fair Housing Act. This case was dismissed at the pleading stage with no amendment allowed. The only amendment made to the initial complaint was to attach a contract. The complaint alleged discriminatory intent using perhaps badly the colloquial term targeting. Targeting does have a history of use by the courts. Specifically it was used to describe intentional discrimination in Hargraves v. Capital City Mortgage Corporation which is a 2000 case out of the District Court for the District of Columbia. The defendants intentionally recruited people of Eastern European origin and they did this through advertising and recruiting using a network of community contacts including Mirella Bersan who delivered Mr. and Mrs. Pintea to Mr. Veran. The singling out of the Pinteas was intentional although there may be a disparate impact shown since people with Eastern European national origin were the only ones hurt by defendants. Then necessarily more people of Eastern European origin were impacted than all other people combined but that's a standard of proof and not necessarily one we would have used in this case. This is a case about intent. The court need not go so far as to say whether or not we have disparate impact. Here the discrimination was intentional. People of Eastern European national origin were chosen on the basis of national origin for an illusory service provided at high cost related to the ownership of residential property leading to the loss of that residential property in foreclosure or alternatively before the foreclosure through a deed being signed over to Mr. Veran. So you're saying that section 3604B applies to post acquisition occurrences like foreclosure? Yes your honor. It affects whether or not one is able to hold the housing, whether or not one can certainly has it maintained. Well it didn't have anything to do with them acquiring the property, they already owned it. They had already purchased it and then they lost it. This was in the process of foreclosure when this encounter happened? Yes your honor, both properties were. So somebody comes to them and says look we can foreclose the foreclosure by this I think $1,200 a month. Okay, so they paid, I'm trying to remember the total number. I think it was about $6,000 your honor. They were members for several months and then there was about a $1,500 initiation fee. All right, well whatever it is that this is what happened and I guess they had a rental house that they kept out of foreclosure and moved into that and this one was a deed in lieu of foreclosure? It was in foreclosure. There was no deed in lieu of foreclosure on either property ever. That's a mistaken representation. There was or was not? There was not. There was never a deed in lieu. Did they ever lose the title of the property? They did lose title to both properties eventually. One, the one that they lived in at the time that all of this started, their home on Knox, they lost title to that through a completed foreclosure. There are other property which you properly characterize as initially being their rental home which they were able to move into was in the initial stages of a foreclosure. For reasons that I don't know, well I know but I mean it's not related to how to save a home, Mr. Varon said sign a quick claim deed over to one of my and it was my initial work so they would have a place to move into to get a quick claim deed back so they could be back in title and then I called the attorneys who were in the very initial stages of that foreclosure and worked very hard, very intensely with them to save that home so the Penteyas would have a place to live. Okay, well what happened to the, was it sold? Their residential home? Yeah, the one that they were in the first place. The one they were in in the first place? The one that they did, they put a quick claim deed and then that they gave that back. Okay, so that home was that what was the one that was originally their rental home which I was able to get the deed back from Mr. Varon and then work with the attorneys who were foreclosing on it and save it through a loan modification. The initial one that they were foreclosure, the foreclosure was quite far advanced when I got involved and just fortunately through some circumstances that arose I was able to not save the home but save them having a deficiency judgment against them and get some other. That's usually what's done in a deed in lieu foreclosure and you eliminate the deficiency but you said that didn't happen. Well it's not a consent foreclosure in this case. A deed in lieu is where I come to a closing table. Same result though. Well yes and no. Statutorily the bank is barred from ever seeking a deficiency when there's a consent foreclosure. Sometimes drafting mistakes can or technicalities even the bank at the last minute requiring people execute an unsecured note can still leave our homeowners on the hook after they do a deed in lieu. Well the deficiency is usually with the bank right? Yes. Yeah so. But we want to avoid that at all costs if people are going to stay in their homes we want to make sure that the money that's in their pocket that comes in their pockets. But a consent degree or deed in lieu foreclosure you end up with they lose the house. Yes. They don't owe any more money. Right. And now they and you've managed to save their rental home. For them to live in. So the only issue is what here? Well the issue here is their their civil rights were violated because of how they were picked out for this. And now you're talking about I guess you're trying to call about race discrimination. You're trying to say this is race the fact that they were Romanian. Under the 1866 act the Civil Rights Act of 1866 yes Romanian at that time would have been characterized as a race. Lots of things we race to describe now were in 1866. I guess that's an originalist then. I'm sorry? An originalist. Well I've no I wouldn't say employs an originalist but as as to the law of 1866 that appears to be how the courts have interpreted and applied it. Are these recent immigrants from Romania? They are first generation immigrants your honor. They're what? They're first generation your honor. So what do they have a thick accent? Yes your honor and I think they would say that Romanian is their first. And why? I think they would say Romanian is their first language. But they do speak English. They do speak English yes. They're actually very smart people. One thing that I want to point out when looking at the statutory screen. Are they educated? I'm sorry? Are they educated people? Yes they are. Mr. Pentea in Europe is just one step away from I think a doctorate in psychology and Mrs. Pentea is also educated in something related to the medical field such that they can run a home health agency. Which is an up and down business right now. When we look at the Fair Housing Act which your honor raised whether or not the behavior applies. I want to look at HUD's interpretation as expressed in the Code of Federal Regulations. If you go to chapter 24 the Code of Federal Regulations section 100 subsection 120. They talk about whether what what is included. And the availability of loans and financial assistance is addressed and refers to providing information which is inaccurate and then it's in the disjunctive or different from that provided to others. Inaccurate or different from that provided to others because of race, color, religion, sex, handicap, familial status, or national origin. And I think that is very important because that disjunctive is used there. So providing inaccurate information is enough and that defeats in my view the theory that I need to have a control group of non-Romanians who received accurate information. Well what are you talking about national origin now? I am talking about national origin. That's is that the under the Fair Housing Act. That's the foundation of the complaint. Yes. It's race. There were two counts. One for the violation of the Civil Rights Act of 1866 which covers race. That's that's that's that's where he goes to race. Right and then the Fair Housing Act covers national origin your honor and race but we don't have to make that stretch under the Fair Housing Act. Stretch is a good way to put it. I'm sorry. Romanians aren't a race. Not today your honor. Except for Count Dracula. But in the in 1866 they would have been considered a race. I even cited a book that I found from 1871 where someone referred to the Romanians as a race. I was hoping to reserve a little time to come back so I'd like to step down if I could. Sit down first. Ms. Shareefs if I'm pronouncing your name correctly. Good afternoon your honors. Carla Shareefs on behalf of the defendants. Your honor I'm here today to ask this court to affirm the decision of the district court which granted the defendant's motion to dismiss finding that the plaintiff's complaint was conclusory and failed to allege the bring the cause within the ambit of the causes of action of the Fair Housing Act violation and the Civil Act violation. I think I want to begin by addressing some of the arguments that plaintiff's counsel raised in her opening argument which was a consistent theme throughout the plaintiff's brief. The plaintiffs alleged that they lost their home at a foreclosure sale. They alleged this in and also on page 11 of their brief they continue to state that the house was lost or sold at a foreclosure sale. This is a false statement. As you noted your honor there was a consent judgment whether you call it a consent judgment or a deed in lieu it achieved the same result. When plaintiff's counsel filed her appearance in the lawsuit the complaint in the foreclosure was still at the defenses we had issued discovery if plaintiff's counsel thought that the answer that was filed was in some way deficient there was ample time for her to have come in and file the motion for a lease to amend the answer. She did not do so. In fact when she responded to summary judgment she did reference repeatedly for the answer that was filed by defendants and argued that based on that said is that the plaintiff was not entitled to summary judgment. In terms of the Fair Housing Act violation plaintiff's complaint cannot succeed under any stretch of the imagination. The complaint for one is filled with just threadbare allegations of the causes of actions. There are no specific allegations as to how the defendants in this case are involved in the rental or sale of a house because they are not. In terms of providing services, the services that were provided by the law office was to defend the plaintiffs in the underlying foreclosure action and a crucial element of the to allege a violation under 3604 C is an element of an advertisement. Plaintiffs said that they were targeted some way because they were Romanians. There is no allegation that the defendants advertised on the radios that they sent out anything. The only allegation is that they were targeted through community contacts. In this case there's no way that the plaintiffs could have been targeted. They voluntarily sought the services of Mr. Varan and the law office and so there is no way that they can prove that they were in any way targeted or that the contracts they first of all they did not have a contract with Mr. Varan. The only contract there are two contracts that are at issue here. There was one with a defendant who's not a party to this case and there was one with the law office. There is no allegation as to how the contracts that were given to the Pentheus in this case were somehow different in form or its terms from contracts that were given to other clients of the law firm who were non-Romanians and as the district court correctly pointed out in terms of the civil rights violation, a plaintiff has to prove that there was intentional discrimination and that that discrimination was based on the race of the plaintiffs. Throughout the complaint it is obvious that the argument the plaintiffs was proposing is that it is because they are from Romania. The very paragraph that begins their complaint stated that they were immigrants from Romania and that they migrated from Eastern Europe. Romania was their first language. The very theme of the arguments or the allegations of the complaint is that they were discriminated against because of the place of origin where they were from and as this court is well aware that national origin is not a cognizant cause of action under the Civil Rights Act. I have to allege that the discrimination was based on some racial animus. There was no such allegations here as the district court correctly pointed out and as it relates to Mr. Varon under section 1981, there had to be an allegation that there was a contract between the plaintiffs and Mr. Varon and as I pointed out previously that there was no contract that was entered into between Mr. Varon and the plaintiffs and there's no allegation that the contract between them and the law office was in any way different and I just want to make sure that I touch on the issue of the post-sale discrimination under the FHA because I know that I believe that is the avenue through which the plaintiffs are alleging that they have a cause of action but if you look at the Block case, it is obvious that even though that case dealt with a post discrimination action that they did go back to the making of the contract, the time of sale and so they're saying that even though the actions that occurred here were post-sale, at the time when they bought the property, there was an agreement that they would be subjected to the rules of the condo association so it affected the whole condition of sale. There is absolutely no allegation and as the district court correctly pointed out, even if they were allowed to amend their complaints and plaintiffs said, oh well, this was dismissed, we only had one chance but if you do all your research and you know what the facts are and you had one chance to amend your complaint, if there were facts that you think are crucial to your cause of action, there's nothing that precluded the plaintiff from including those facts of the amended complaint. In fact, the only things that were added were exhibits of the actual contracts that were entered into between the parties. So under no stretch of the imagination, can the plaintiffs in this case allege any plausible facts that would bring their cause of action under the Fair Housing Act or under the Civil Rights Act? Among other things, it's a 12b6, right? Yes, it was a 12b6 motion, your honor. You're the one that's talking about sanctions? Oh yes, I forgot. We did file a motion for sanctions, your honor, and the premise of the motion was that there were so many blatant misrepresentation and falsehood that permeated the complaint, the responses to the motions and even on appeal, even after the plaintiffs started out saying that the law office never even tried to get them a modification. They received a modification and they rejected the modification. And then they're asserting that they paid Mr. Varon sums of money when there was no agreement between them and Mr. Varon. Just this whole unprofessional nature of how the complaint was brought, the gross misrepresentation stating that the property was sold at a foreclosure sale when the plaintiff's attorney was the attorney involved in the case when she did sign the other cases where the plaintiff's attorney has brought these exact word-for-word allegations against other attorneys, and it just shows a blatant disregard for the truth. Even when confronted with the actual truth, the plaintiffs, instead of conceding and change this course of action, the plaintiffs and their attorney just continued to reassert these falsehoods. And even here this morning, stating again that the property was lost at a foreclosure. So we believe that based on when you take everything as a whole, how this was litigated, the complaints, the responses, the briefs, the arguments here today, that we believe that sanctions should in fact be that the plaintiffs should be sanctioned for the way this lawsuit was litigated. And if there are no further questions, we would ask that this court affirm the decision of the district court and grant the defendant's motion for sanctions. Thank you, Ms. Sharif. You are so welcome. Ms. Dudley? I have intentionally not taken any of my client's time with the sanctions matter. I want to make sure that their case is presented as fairly and fully as I can as to the merits of it, which are significant. This home was indeed lost to a foreclosure sale. The way the Illinois mortgage foreclosure law works is that after there is a judgment, however it is obtained, the property goes to a foreclosure sale. That is an auction. It is auctioned off. And after the auction and the judge confirms the sale, that process may be shortened a little bit. It's no choice but to do a consent when, as an experienced practitioner in foreclosures for many years, I came in and said you've given away, through this first answer, all of your marbles that we could have saved for you. There were so-called affirmative defenses answered, and I want to just point to the SIR reply that I filed that has what a competent answer to a foreclosure complaint that will survive and has survived summary judgment and foreclosure contains. That was not the answer filed here. This answer would not have withstood summary judgment. And I point to the Bednar's case as an example that says, for example, you have to go through and make a denial of the implied allegations. I worked with what I had in terms of making that assessment. If I had answered over the existing answer, those answers remain in the record as judicial admissions, and they still support summary judgment. So these people very truly did lose their home in foreclosure. There's some idea that we've come in here and made a bunch of allegations against a bunch of attorneys, and they don't work, and we just still keep coming back. That is just not true. I'm not going to go into the procedural posture of the Fenton case because that's before this court, and counsel's not here, and that wouldn't be fair. But that has not been denied ever by anyone but an arbitrator as far as saying that there's not a Fair Housing Act case there. And by Fair Housing Act case, I mean the core 3601 at SEC, you know, not the 3617. As to the Wildermuth case, which they cited, again, opposing counsel's not here, but that case has not been dismissed. It is still under consideration. It's, in fact, still under briefing. So we've never been told, no, these cases just aren't ever going to be viable because there's some flaw that you've missed. Swanson versus Citibank. Okay, you have to stop. Okay, thank you, your honor. I appreciate the indulgence I received. Well, thank you to both counsel and the court. We'll be in recess. Thank you.